UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


DRESSER-RAND COMPANY,       )     CASE NO:  4:12-CV-00184
                           )
           Plaintiff,    )        CIVIL
                           )
    vs.                )      Houston, Texas
                           )
SCHUTTE & KOERTING       )    Monday, April 10, 2017
ACQUISITION COMPANY, ET AL., )   (1:25 p.m. to 1:59 p.m.)
                           )
          Defendants.    )


DISCOVERY HEARING


BEFORE THE HONORABLE NANCY K. JOHNSON,
UNITED STATES MAGISTRATE JUDGE




Appearances:           See Next Page

Court Recorder:       Suzanne Guevara

Clerk:              Shannon Jones

Transcriber:         Exceptional Reporting Services, Inc.
                    P.O. Box 18668
                    Corpus Christi, TX 78480-8668
                    361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**APPEARANCES FOR:**


Plaintiff:                     KYLE C. REEB, ESQ.
                               JONATHAN M. PIERCE, ESQ.
                               JAMIE L. GODSEY, ESQ.
                               Porter Hedges, LLP
                               1000 Main Street, 36th Floor
                               Houston, TX 77002

Schutte Defendants:            ERIC G. OSBORNE, ESQ.
                               GREGORY L. PORTER, ESQ.
                               JOSEPH W. GOLINKIN, II, ESQ.
                               Andrews Kurth Kenyon, LLP
                               600 Travis Street, Suite 4200
                               Houston, TX 77002

Kanaksinh Ashar, Anthony       DAVID K. ANDERSON, ESQ.
Jardine, Robert Maxwell:       Anderson & Cunningham
                               1221 Lamar, Suite 1115
                               Houston, TX 77098

<u>**Houston, Texas; Monday, April 10, 2017; 1:25 p.m.**</u>

**(Call to Order)**

1    **THE COURT:** All right. Good afternoon, everyone.
Please be seated.

5    **(All parties resumed their seats)**

6    **THE COURT:** All right. We're here in *Dresser-Rand
versus S&K*. Who's here for Dresser Rand?

8    **MS. GODSEY:** Your Honor, Jamie Godsey on behalf of
Dresser-Rand, with Jonathan Pierce and Kyle Reeb.

10   **THE COURT:** Say your name again. Jamie?

11   **MS. GODSEY:** Jamie Godsey.

12   **THE COURT:** How did you miss not being on the docket
sheet?

14   **MS. GODSEY:** I'm not sure, Your Honor. Usually I'm
at the -- on the signature block --

16   **THE COURT:** Yeah. Okay.

17   **MS. GODSEY:** -- problem is.

18   **THE CLERK:** I have, Your Honor, --

19   **THE COURT:** Okay. Well, we'll have to get that on
there. Who else?

21   **MR. PIERCE:** Jonathan Pierce, Your Honor.

22   **THE COURT:** Mr. Pierce. I see you. Yes.

23   **MR. REEB:** Kyle Reeb, Your Honor.

24   **THE COURT:** Yeah. All right. Good.

25   And for S&K?

1          **MR. GOLINKIN:**  Your Honor, Joseph Golinkin, Greg

2     Porter, Connell Hess are here for S&K.

3          **THE COURT:**  All right.

4          **MR. GOLINKIN:**  And this is --

5          **MR. ANDERSON:**  David Anderson, Your Honor, for the

6     Individual Defendants.

7          **THE COURT:**  All right.  So, Ms. Godsey, will you be

8     making the argument for Plaintiff?

9          **MS. GODSEY:**  I will, Your Honor.

10          **THE COURT:**  So explain to me how you are going to try

11     this case without disclosing what the trade secret is.

12          **MS. GODSEY:**  Your Honor, it's Dresser-Rand's position

13     that we have disclosed what the trade secret is to all of --

14     all counsel for the Defendants, both the Individual Defendants

15     and S&K, both in our interrogatories and our second amended

16     complaint, as well as through the discovery process and our

17     expert reports.

18          **THE COURT:**  So Mr. Pintotzi (phonetic) can't see it?

19     He's just going to be surprised at trial.

20          **MS. GODSEY:**  No, Your Honor.  They -- the Defendants

21     have seen it.  They stole it and they used it.  A description

22     of those trade secrets is sufficient to put them on notice as

23     to what those specific trade secrets are, particularly because

24     S&K has produced a number of them back to us because they were

25     in their, you know, their emails.

1      **THE COURT:**  So I'm at sea here, obviously.  He's --

2  it sounds -- I thought that you were objecting to Mr. Pintotzi

3  having access to this expert report, but apparently you're not.

4      **MS. GODSEY:**  No, Your Honor.  I apologize if I

5  misspoke -- if I misspoke.  We are opposed to Mr. Pintotzi

6  having access to the expert report because the protective order

7  that governs this case, particularly -- specifically precludes

8  the Individual Defendants and the parties from having access to

9  things that are designated highly confidential which expressly

10 includes the trade secret.  This is something that is given to

11 the parties or to the counsel for both parties, as well as

12 their experts have full access to it in order to rebut the

13 reports that are at issue.

14      **THE COURT:**  So the first time the party will hear

15 what your trade secret is is at trial?  Or you're not going to

16 talk about it at trial either.

17      **MS. GODSEY:**  No, Your Honor, we will talk about it at

18 trial.  Then we have discussed during the party's depositions

19 what some of those trade secrets are and we have disclosed some

20 of those particular trade secrets in the depositions while

21 maintaining the highly confidential status and making it clear

22 throughout the depositions that we were relying on the

23 protective order to maintain the highly confidential status of

24 those documents.  We have explained to them what those trade

25 secrets are and, Your Honor, they plugged flash drives into our

1  syst -- to the Dresser-Rand system and pulled -- so downloaded

2  hundreds and thousands of documents and then took those with

3  them, and accessed them, and used them to develop S&K's valves

4  and other parts of their business.  They know precisely what it

5  was that they used.  There's no question about that.  Can't

6  deny knowing what type -- if they pulled the Dresser-Rand name

7  at the top of it and that they took with them from a company

8  they had worked for for decades in some of the cases.

9        THE COURT:  So I'm still befuddled on why

10  Mr. Pintotzi can't see what you're claiming.  I wasn't aware

11  that he was one of the ones who had downloaded.

12        MS. GODSEY:  Your Honor, he's not one of the ones

13  that downloaded.  He is the representative of S&K --

14        THE COURT:  Yes.  Exactly.

15        MS. GODSEY:  -- for whom the individuals used the

16  Dresser-Rand information to the benefit S&K.  He was on some of

17  the emails, as the Individual Defendants were at S&K and

18  emailing him to get price information from Dresser-Rand,

19  certain procedures that they were using.  They -- but the

20  primary reason he is precluded from viewing this because he --

21  S&K is a direct competitor of Dresser-Rand and it poses a

22  significant risk of harm to Dresser-Rand's trade secrets,

23  further harm, for him to continue to have further -- additional

24  access to things that were stolen and taken --

25        THE COURT:  Right.

1          **MS. GODSEY:**  -- from Dresser-Rand.

2          **THE COURT:**  So, Ms. Godsey, you put off this day for

3    a long time, but it's here now and I've read the pleadings.

4    It's my ruling that these individuals are going to be allowed

5    to know what the trade secrets are.

6          **MS. GODSEY:**  Your Honor --

7          **THE COURT:**  You're going to trial.

8          **MS. GODSEY:**  Absolutely, Your Honor.  We don't

9    dispute that they're allowed to know what those trade secrets

10   are, but we contend that they shouldn't be allowed to have

11   access to the documents themselves because not only have they

12   shown a pattern of violating confidentiality agreements, their

13   employment agreements, but also this Court's orders for the

14   past several years that says they were not supposed to continue

15   access in the Dresser-Rand materials.  We've got several

16   admissions and several pieces of evidence that, in part, we've

17   included in our motion, showing that they blatantly disregarded

18   those rules and continued accessing them.

19         So Dresser-Rand has no reasonable assurance that if

20   they are shown these documents that they're going to abide by

21   the protective order and not continue to use them to Dresser-

22   Rand's harm -- further competitive harm.

23         And, furthermore, the basis for the Defendant's, as

24   we understand it, desire to show the Defendants these documents

25   is to assist their experts in drafting their rebuttal reports,

1  but they've not articulated any (indiscernible) reason why

2  that's necessary.  That's precisely why you hire an expert is

3  to evaluate the comparisons.  Dresser-Rand was able to have its

4  expert make a comparison, draft a report, without having access

5  to S & -- without Dresser-Rand clients having access to S&K's

6  highly confidential information.  And S&K should be able to do

7  the same exact thing.

8          **THE COURT:**  Well I appreciate your argument, but I am

9  going to grant S&K emergency's motion to permit some review of

10 your expert reports.  Now you wanted Mr. --

11         **MR. GOLINKIN:**  Sorry, Your Honor.

12         **THE COURT:**  -- Mr. Pintotzi --

13         **MR. GOLINKIN:**  Yes.  Yes, Your Honor.

14         **THE COURT:**  -- he's your president --

15         **MR. GOLINKIN:**  Yes, Your Honor.  And the Individual

16 Defendants.

17         **THE COURT:**  -- and your -- the Individual Defendants.

18         **MR. GOLINKIN:**  Yes, Your Honor.

19         **THE COURT:**  Because your experts have already seen

20 them?

21         **MR. GOLINKIN:**  The experts have already seen the

22 reports.  Yes, Your Honor.

23         **THE COURT:**  All right.

24         **MS. GODSEY:**  Your Honor, may I ask a clarification

25 question.  Your referring specifically to the trade secrets

1  that are disclosed which are contained within Dr. Boise's

2  technical expert report?

3         **THE COURT:**  Correct.

4         **MS. GODSEY:**  The Defendants are also asking for all

5  of the other expert reports to be viewed by the Defendants and

6  that's particularly concerning with respect to Mr. Van Meter's

7  report, who discusses the damages that are at issue in this

8  case.  There are a lot of very, very sensitive financial

9  documents and schedules that are contained within that report

10  that the Defendants have not previously had access to while

11  they worked at Dresser-Rand and that they're -- S&K should not

12  be privy to because there's no need for them to see them in

13  response to our -- in order to assist in responding to our

14  expert report.  Their expert is able to do that.

15         **THE COURT:**  You're going to trial.  They need to know

16  this information.  It defies logic to me how you can expect a

17  party to go to trial and not have access to the evidence, only

18  the lawyer.  I think that's --

19         **MR. GOLINKIN:**  Your Honor --

20         **THE COURT:**  -- highly unusual --

21         **MR. GOLINKIN:**  -- just if I -- if I may add, just

22  quickly.  These documents, the documents in Dr. Boise's report,

23  have been shown to many of these Defendants in their

24  deposition.  So it's not like this is something that they've

25  never allowed them to see.  We understand their claim at least

1  for taking (indiscernible) --

2          **THE COURT:**  Well, you're not going to be allowed to

3  have -- the Individual Defendants are not going to be allowed

4  to take these documents home --

5          **MR. GOLINKIN:**  We completely agree, Your Honor.

6          **THE COURT:**  -- for homework.

7          **MR. GOLINKIN:**  Of course.

8          **THE COURT:**  I mean so -- but they can be shown in --

9  you know, in trial preparation.

10          **MR. GOLINKIN:**  And that's all we ask, Your Honor.

11          **THE COURT:**  But no homework.

12          **MR. GOLINKIN:**  No, we completely agree.  So just to

13  clarify.  So if we were to have, say, Mr. Anderson or

14  Mr. Utain, counsel, present going through what the expert --

15          **THE COURT:**  Well, of course --

16          **MR. GOLINKIN:**  -- walking through -- I mean that's

17  really all we're after.

18          **THE COURT:**  -- of course, you have to mount a

19  defense.

20          **MR. GOLINKIN:**  Okay.  That's really all we're after.

21          **THE COURT:**  But no taking documents home.  No

22  personal possession.  No downloading or whatever.

23          **MR. GOLINKIN:**  Of course.

24          **MR. PIERCE:**  Your Honor, may I add something?

25          **THE COURT:**  Yes, sir.

1          **MR. PIERCE:**  So I just wanted to review Ms. Godsey's

2   concern about that financial documents and we're giving sales

3   data and margin data, customer data, quote data, to our direct

4   competitor.

5          **THE COURT:**  You brought this fight, darling.

6          **MR. PIERCE:**  I will say in my 20 years I've never

7   given a damages report to the other side that contained my

8   client's proprietary financial data.  Never.  It never happens.

9          **THE COURT:**  Then why is it in the report?  I mean --

10         **MR. PIERCE:**  Because you have to some compare -- you

11  have to have some profits and (indiscernible)

12         **THE COURT:**  Right.  So you've chosen to bring this

13  lawsuit.

14         **MR. PIERCE:**  And that's why we have a protective

15  order, to shield our company's information from our

16  competitors, who have been stealing it for years.  Stealing it

17  for years.  They're going to use it against us.  We have no

18  other way to --

19         **THE COURT:**  I'm sympathetic but you brought the

20  lawsuit.  You are seeking the big billions in damages so they

21  have a right to know how you're calculating those damages.

22         **MR. PIERCE:**  I agree they can learn the methodology

23  and they can know the end numbers.  They should not, under any

24  circumstance, even at trial, have access to our financial

25  information.  It should never happen.  If that could leave the

1    courtroom, that's the way it goes.

2         THE COURT:  I have never heard a case tried like

3    that.

4         MR. PIERCE:  Your Honor, we are --

5         THE COURT:  Have you?  I mean I've never heard a case

6    tried like that, I'm sorry.

7         MR. PIERCE:  Your Honor, so --

8         THE COURT:  I haven't.

9         MR. PIERCE:  -- so what's happened in this case is

10   they stole hundreds of thousands of documents.  In order to

11   address that theft, our client has to show our direct

12   competitor all of our financial information?

13        THE COURT:  Yes.  I mean --

14        MR. PIERCE:  That does not --

15        THE COURT:  -- I mean if you have -- that's the basis

16   for your calculation.

17        MR. PIERCE:  Well, then I would ask for your,

18   respectfully, Your Honor, I understand where you're coming

19   from, I would ask that they not immediately turn over the

20   Mr. Van Meter's report.  We're going to have to take some other

21   action, I think.  We're going to have to do something else.  I

22   don't think our client can do that.

23        THE COURT:  So if you want a stay of my ruling,

24   you'll need to get that from Judge Miller and quickly.

25        MR. PIERCE:  Is tomorrow quickly enough?

1          **THE COURT:**  Well, I will -- I -- you can -- you're

2    going to file a motion tomorrow?

3          **MR. PIERCE:**  We'll have to see.  Your Honor tells us

4    it has to be filed.  It obviously --

5          **THE COURT:**  You have to file it because my order is

6    effective as I'm saying it.  So --

7          **MR. PIERCE:**  There has to be some way that we can

8    challenge, respectfully, Your Honor's order on this.  This

9    is -- this is a hugely critical point.  Our direct competitor

10   is going to get our financial information.  It's simply unfair.

11   They stole our stuff --

12         **THE COURT:**  I totally hear you --

13         **MR. PIERCE:**  -- and now we're put in this

14   situation --

15         **THE COURT:**  -- on that and, yes, I appreciate it's

16   frustrating and maybe the jury will punish them, but damages

17   have to be calculated on evidence and if you have to turn over

18   that evidence to get damages, then that is a decision you've

19   made by filing this lawsuit.  So --

20         **MR. PIERCE:**  Our expert calculated our damages using

21   their financial information and not a single person at Dresser-

22   Rand even sniffed their financial information.  Can Dresser-

23   Rand get access to their financial information then under your

24   order?

25         **THE COURT:**  We're not redoing discovery because I

1   made a ruling on this.

2       **MR. PIERCE:**  No, but I'm saying if they're going to

3   provide rebuttal reports and so, in theory, if their principals

4   have access to our reports, our principals --

5       **THE COURT:**  I think the Rules allow access to

6   underlying data.

7       **MR. GOLINKIN:**  We would agree with that, Your Honor,

8   of course.

9       **MR. PIERCE:**  Subject to orders of the case.  There's

10  a protective order which precludes their individuals from

11  seeing those documents.  Judge Miller issued the order that

12  says they can't see it.

13      **MS. GODSEY:**  Particularly (indiscernible) Texas trade

14  secrets --

15      **THE COURT:**  Well --

16      **MS. GODSEY:**  -- cases, it's not uncommon for cases

17  that have protective orders to specifically preclude individual

18  parties from having access to the information.  And we cited

19  two cases in our briefing, Your Honor, one from the Texas

20  Supreme Court and the other from the Southern District of Texas

21  where that was at issue.  In the Texas Supreme Court case they

22  specifically prevented the company Defendant's 30(b)(6) or

23  corporate representatives from being present in the courtroom

24  during that -- during the presentation of evidence for this

25  exact reason.

1          **MR. GOLINKIN:**  Am I to understand, just I want to

2    make sure I am clear, are you suggesting that you would have

3    the Court exclude Individual Defendants to this lawsuit from

4    the Courtroom during testimony at trial?

5          **MR. PIERCE:**  If we don't --

6          **THE COURT:**  Is that right?  Yes.

7          **MR. PIERCE:**  (Indiscernible) plans --

8          **THE COURT:**  Of course --

9          **MR. GOLINKIN:**  Currently, that is -- that's what I'm

10   trying --

11         **MR. PIERCE:**  Yes, and I think it's fair.  His clients

12   stole our stuff --

13         **THE COURT:**  All right --

14         **MR. PIERCE:**  -- and now we're being (indiscernible)

15         **THE COURT:**  Well, that's definitely something you're

16   going to have to take up with the big guy because, you know,

17   that is way above my pay grade on who gets to be in the

18   Courtroom -- you know, I've tried secret cases and the

19   Courtroom was empty but the parties were all in the well of the

20   Courtroom and the parties heard everything.  The public was

21   excluded, not anyone -- you know, not the parties.  And so, I'm

22   just not familiar with it.  I think it's highly unusual but --

23   and it's Judge Miller's protective order -- but I've seen a lot

24   of these protective orders.  This just seems -- your position

25   seems extreme to me.  It just does.

1      **MR. GOLINKIN:**  Just to clarify one thing.  We're not

2  seeking a whole set of E designation of their --

3      **THE COURT:**  I --

4      **MR. GOLINKIN:**  -- we're just seeking -- okay.  As

5  long as -- I just wanted to make sure that (indiscernible) --

6      **THE COURT:**  And I will write in my Minute entry, you

7  know, Mr. -- the representative of S&K, Mr. Pintotzi, and the

8  Individual Defendants we'll allow to have access to these

9  documents with, you know, for attorney prep with their

10 attorneys present.

11     **MR. GOLINKIN:**  That's fair.  Very fair, Your Honor.

12     **THE COURT:**  No taking anything home, no copies in a

13 briefcase --

14     **MR. GOLINKIN:**  Absolutely.

15     **THE COURT:**  -- and --

16     **MR. GOLINKIN:**  Absolutely understood.

17     **THE COURT:**  -- and as to the financial information,

18 it's the same thing.

19     **MR. GOLINKIN:**  Absolutely.

20     **THE COURT:**  But they've got to know where, you know,

21 they're parties in this lawsuit.  So, as to -- that will be my

22 order.  If you want to appeal, you need to get that on file.

23     **MR. PIERCE:**  Your Honor, if I may --

24     **MR. REEB:**  And just one point for clarity and that we

25 may try to take some further action here.  But if that's your

order, at least with respect to their folks and they can have a

corporate representative looking at our report, is it also then

your respective order that we can designate one of our

corporate representatives to look at both our reports because

the Dr. Boise report, which is the engineering report, that

compares and talks about the trade secrets, we had our expert

wholly write that report based on comparisons of the Dresser-

Rand technical materials to the S&K technical materials and S&K

had designated all of their technical materials highly

confidential.  Now, if they're going to be allowed to have the

Individual Defendants, as well as a corporate representative to

look at our report in order to make a rebuttal report, I think

in the interest of fairness we should be able to have a

corporate representative on our side to both look at our

report, as well as their rebuttal report, so that we can

prepare whatever responses we need.

        **THE COURT:**  Opposed or unopposed?

        **MR. GOLINKIN:**  Just trying to understand.  So you're

saying that you would like basically the ability for your court

representatives to review our expert reports?

        **MR. REEB:**  As well as ours.  I mean it --

understanding this case because of the protective order that's

in place and because they marked all --

        **THE COURT:**  You all wrote the protective order.

        **MR. REEB:**  But -- and what happened with the

1  protective order?  We were very happy with the protective

2  order.  But because of the protective order that's in place, we

3  were required to have our expert engineer --

4          **THE COURT:**  Uh-huh.

5          **MR. REEB:**  -- analyze all of their materials --

6          **THE COURT:**  Right.

7          **MR. REEB:**  -- without input from anyone on our team,

8  right?

9          **MR. GOLINKIN:**  Well --

10          **MR. REEB:**  On our -- excuse me, sir.  On our team.

11  They now are saying that they should not be required to prepare

12  their reports under the same conditions, that their experts

13  should be allowed to prepare their report not only based on

14  their expert's knowledge and their expert's abilities, but also

15  based on input from someone from their team.  And so all I'm

16  saying is that if their team's allowed to look at our highly

17  confidential materials contained in the reports, our team

18  should be able to look at their highly confidential materials

19  contained in the reports.  It's the only way to keep a level

20  playing field.  And what they are in Court here arguing today

21  is that even though we've lived by a highly confidential trade

22  secret engineering documents that shows design specifications,

23  highly confidential, that they should be able to show it to

24  their folks.  And I'm saying that if that's what they're going

25  to go with --

1          **THE COURT:**  Not their folks.  Mr. Pintotzi --

2          **MR. REEB:**  Okay.

3          **THE COURT:**  And the guys you sued.  Not everyone in

4     the company.

5          **MR. REEB:**  But we also get to have a corporate

6     representative, correct?  And I would like to be able to show

7     our corporate representative their highly confidential

8     drawings.

9          **THE COURT:**  Opposed or unopposed?

10          **MR. GOLINKIN:**  I think we're opposed, but I don't

11     quite understand why, I guess, is what I'm driving at.  They --

12     one of the things -- and it's a little different to be

13     rebutting an expert report.  So they're accusing the Individual

14     Defendants and our company of having taken specific trade

15     secrets.

16          **THE COURT:**  Right.

17          **MR. GOLINKIN:**  And I think there's an important

18     difference between documents and trade secrets.  They say that

19     documents were taken and I don't think there's anybody --

20          **THE COURT:**  Right.

21          **MR. GOLINKIN:**  -- here disputing that.  But the trade

22     secrets is information contained therein.  Their expert comes

23     in and says hey, here are the trade secrets or the information

24     we believe they took.  Here's why we believe they took it.  I

25     don't see how the company or the Individual Defendants can

1    possibly respond in a way that's useful for anybody without

2    actually allowing the Individual Defendants, who have knowledge

3    of how they created whatever design they're alleging

4    incorporates a trade secret, without actually having access to

5    that information.  So it's pretty imperative in our instance

6    that they be able to review these materials.  They are

7    Defendants and parties to the lawsuit.

8            **THE COURT:**  Uh-huh.

9            **MR. GOLINKIN:**  I'm not sure I follow why it's

10   important -- sorry.

11           **THE COURT:**  All right.  Mr. Anderson's going to jump

12   in here.

13           **MR. ANDERSON:**  I would just ask could we have a

14   little bit of time to confer on this because Mr. Reeb raised

15   this for the first time, and, personally, I'd just like to have

16   an opportunity to talk to him about it.  I'm wondering if we

17   could work it out.  I think right now everybody's -- frankly,

18   everybody's afraid to agree to something that they're not sure

19   of what they're agreeing to, but I'm -- well, I don't want to

20   say optimistic because every time I say that things go south,

21   but I think we could talk and maybe make some progress.

22           **THE COURT:**  So do you want to talk and come back in

23   30 minutes?  Do you want to come back in a day or a week?  What

24   do you want to -- what do you think?

25           **MR. ANDERSON:**  I'll defer that one.

1          **MR. REEB:**  I'll say one thing I know.  One thing,

2     Your Honor, I think that we're just not going to be able to

3     reach an agreement on and I think that's the financial expert's

4     report.  Mr. Van Meter, who has all of our profit margins and

5     sales data in there.  I just don't think there's any way we can

6     agree to show --

7          **THE COURT:**  Well, how can you -- if you've got profit

8     margins and those are relevant to your damage calculation,

9     aren't you going to be saying that -- what that is to a jury?

10    Our sales margin is this, therefore --

11         **MR. REEB:**  Absolutely, Your Honor, but there's

12    precedent in cases like this where a protective order is in

13    place like this, that those who stole the information and who

14    are direct competitors are excused from the room during that

15    testimony and only the jury hears from the experts with respect

16    to what they believe.

17         **MR. PIERCE:**  Why do we need -- why they need our

18    financial information, why their principals need our financial

19    information --

20         **THE COURT:**  Because if --

21         **MR. PIERCE:**  -- is a mystery to me.

22         **THE COURT:**  -- you're basing your damage calculation

23    on yours then that's your choice.

24         **MR. GOLINKIN:**  It's not important.

25         **THE COURT:**  It's a choice.  I mean you could have

1   based it on their financial information, too, if you wanted to

2   keep yours secret.

3           **MR. PIERCE:**  Well, in fairness, both are in the

4   report.  I would have to calculate their profits they --

5           **THE COURT:**  Right.

6           **MR. PIERCE:**  -- made and the profits that we lost

7   based on our historical profits.  There's -- I don't know what

8   they're going to add to their expert report based on our -- how

9   are they going to refute if their individual people that

10  they'll know Dresser-Rand didn't pay $1.3 million dollars in

11  sales to Elliott in 2010.  They have no idea.  I don't know

12  what their access to our financial information or how it's

13  going to help their damages expert.  It's a -- it's an

14  expedition to learn more valuable information about our client.

15  They've got enough of our valuation valuable information, so

16  they shouldn't be given this.

17          **MR. ANDERSON:**  I think I was misconstrued.  What I

18  was suggesting is that we can talk to -- you had -- I thought

19  we'd left that topic, the report.  We're moving --

20          **MR. GOLINKIN:**  Oh, okay.

21          **MR. ANDERSON:**  -- we were moving on to the next topic

22  which was Mr. Reeb's suggestion that some of his people be

23  allowed to see, I guess, our expert reports.  That's what I'm

24  talking --

25          **THE COURT:**  Okay.

1          **MR. ANDERSON:**  -- about.  And I wasn't really

2   inviting to go back to the salad bar on this -- on this issue

3   of the -- of damage experts.

4          **THE COURT:**  Okay.  So you're going to appeal my

5   ruling --

6          **MR. REEB:**  I --

7          **THE COURT:**  -- and you're going to do it quickly.

8          **MR. REEB:**  Yeah, Your Honor, I think with all due

9   respect, I think we have to.

10          **THE COURT:**  Do you think I care for one minute?

11          **MR. REEB:**  No, I was just trying to be respectful.

12          **THE COURT:**  No, I mean -- and I, you know, I mean I'm

13   a lawyer.  I've got a thick skin.  You know, you have to do it.

14   So the point is, do it quickly.  Ask for a stay of my ruling

15   and see if he does it.

16          **MR. GOLINKIN:**  Your Honor, quickly, just one question

17   about the issue of timing, an extension, in lieu of this

18   ruling.  So we spent two weeks attempting to --

19          **THE COURT:**  I'm going to give you time.  I mean, you

20   know, you're not -- it's not my goal to be, you know, tooling

21   anyone around anymore than I already am.  But yeah.

22          **MR. GOLINKIN:**  Perfect.

23          **THE COURT:**  So the question is how is that going to

24   work?  So let's say, let's assume you are going to appeal and

25   you sound like you are kind of asking -- you were asking for

1  June 13th, which sounded awfully generous, but I was more

2  inclined to give you 30 days -- let me just give you 30 days

3  after Judge Miller rules.  Is that --

4       **MR. GOLINKIN:**  That's completely reasonable.  That's

5  completely reasonable.

6       **MR. REEB:**  It could impact the remainder of the

7  schedule, Your Honor, in that there is a dispositive motion

8  date.  We expect to be making dispositive motions and, you

9  know --

10      **THE COURT:**  That'll be bumped back.  So let's see.

11      **(Pause)**

12      So I'm going to give you until -- you can file an

13  appeal, what?  Today's Monday -- by Thursday?  Friday?

14      **MR. PIERCE:**  That's -- yes, Your Honor.

15      **THE COURT:**  So that's, let's see.  So if you file an

16  appeal by -- I'll give you through close of business Good

17  Friday.  Then we'll wait for Judge Miller to rule.  Thirty days

18  after he rules, your report is due.

19      **MR. GOLINKIN:**  Certainly.  Certainly.

20      **MR. REEB:**  And, Your Honor, we're to understand that

21  they are not to show their folks anything until we hear a

22  ruling from Judge Miller, correct?  Just in the way of these

23  expert reports?

24      **MR. ANDERSON:**  I was going to ask about that.  I

25  thought that your appeal's going to be limited to the financial

1   information.  So we could get to work on the technical aspects

2   of the case.  If the answer's no, it's no.  But that's what I

3   understood.

4           **THE COURT:**  Well just, you know, you can get to work

5   if it's just you and your experts.  It's bringing your clients

6   in --

7           **MR. REEB:**  You'll have 30 days --

8           **MR. GOLINKIN:**  We're fine.  We're fine.

9           **MR. REEB:**  So then your clients --

10          **MR. GOLINKIN:**  That restores the status quo.

11          **MR. PIERCE:**  That's the question?

12          **MR. GOLINKIN:**  That restores the status quo.

13          **MR. ANDERSON:**  Yeah, no, because I don't think we

14  have an agreement on anything at this point.

15          **THE COURT:**  All right.

16          **MR. ANDERSON:**  What we do have is an order that --

17          **THE COURT:**  I will order a status quo on that until

18  Judge Miller rules.  Then -- so let's say he rules -- you get

19  your report filed.  What kind of time lag then was there to the

20  motion for summary judgment?

21          **MR. PIERCE:**  It was about a three month lag, Your

22  Honor.

23          **THE COURT:**  Three months?  Are you kidding?

24          **MR. PIERCE:**  Well, I'll say two months -- two months.

25          **MR. REEB:**  Well, say two months.

1          **THE COURT:**  Three months, my God.

2          **MR. REEB:**  And we -- we have --

3          **THE COURT:**  This is crazy.

4          **MR. REEB:**  -- on this side we consent -- consented to

5    you presiding over all matters here.  So if they want to do the

6    same thing and you're happy with less than two months on

7    summary judgment, we can do that.

8          **THE COURT:**  I don't know what you've just said.

9          **MR. REEB:**  I said if you're willing to hear summary

10   judgment and we've consented to that and you are okay with

11   ruling on that in less than two months --

12         **THE COURT:**  Uh-huh.

13         **MR. REEB:**  -- we are fine with that time frame, too.

14         **MR. GOLINKIN:**  We are fine for her just to keep it

15   status quo as is.

16         **MR. REEB:**  So if that would be a reasonable -- I

17   don't know, maybe I'm wrong.

18         **THE COURT:**  So right now the case was referred to me,

19   I think, for -- was it a limited referral?

20         **MR. GOLINKIN:**  It's all process except for trial and

21   (indiscernible) --

22         **THE COURT:**  So it's just a full pretrial.

23         **MR. GOLINKIN:**  Yes, Your Honor.

24         **THE COURT:**  So, yes.  I will be hearing the summary

25   judgments.  It will be on a recommendation.

1          MR. GOLINKIN:  Okay.

2          THE COURT:  So you don't have to consent on that.  I

3    see you filed a consent but that would be to give me the whole

4    case for final judgment purposes for trial.

5          MR. PIERCE:  That's correct.

6          MR. REEB:  Yes.

7          THE COURT:  All right.  So where is that schedule?

8    What date was the scheduling order entered?  I'm just having a

9    hard time finding --

10          THE CLERK:  It was on January 18th, Your Honor.

11          THE COURT:  January 18th --

12          THE CLERK:  -- (indiscernible) a copy of it.

13          THE COURT:  -- oh, I see it.  Okay.  So your

14    dispositive motion was just due one month after discovery

15    ended, which is pretty standard, I think.  So if you've got --

16    if you're expert report is due 30 days after Judge Miller

17    rules, discovery ends let's say 45 days thereafter.  Is that

18    enough time to get your experts done?

19          MR. GOLINKIN:  I think that is --

20          THE COURT:  That seems extremely generous to me.

21          MR. GOLINKIN:  I think certainly I'm (indiscernible)

22          THE COURT:  And your motion for summary judgment --

23    how many issues -- who's moving for summary judgment?

24          MR. GOLINKIN:  I suspect that we will probably --

25          THE COURT:  The usual suspects?

1          **MR. GOLINKIN:**  Yes, Your Honor.

2          **THE COURT:**  What issues?

3          **MR. GOLINKIN:**  I'm guessing that it's -- I don't want

4    to bind myself, but I think it's going to be a no evidence.

5          **THE COURT:**  No evidence?

6          **MR. GOLINKIN:**  Yes, Your Honor.

7          **THE COURT:**  I'll say your motion for summary judgment

8    is due 21 days thereafter.  I'll probably be -- I'm just

9    writing these down.  We'll put them in the Minute entry, but

10   once Judge Miller rules, I'll probably -- and, Shannon, help me

11   with my memory, get you a date that actually puts a date on it.

12   Okay?

13         **MR. PIERCE:**  Thank you.

14         **MR. REEB:**  Thank you.

15         **THE COURT:**  All right.  Now, you wanted three extra

16   depositions?

17         **MR. GOLINKIN:**  Yes, Your Honor.

18         **THE COURT:**  Talk to me about that.

19         **MR. GOLINKIN:**  So essentially, I think it's --

20         **THE COURT:**  I'm going to get my Kleenex here, just in

21   case I need it.

22         **MR. GOLINKIN:**  It's -- no, don't worry.  It's not a

23   sob story.  It's simply they added -- so it's simply they added

24   five additional witnesses.  So they have  now disclosed nine

25   current or former Dresser employees and four actual

1  (indiscernible).  So that brings it to 13.  We have a couple of

2  witnesses that we would like to depose as well.  So, you know,

3  we're looking at, I don't know, 15 or 16 total potential

4  witnesses --

5          THE COURT:  So who are these people?

6          MR. GOLINKIN:  So that remains to be seen, Your

7  Honor.  We don't really know.  We're figuring it out.  The

8  reason we've asked for up to 13 is simply because we don't know

9  when we're going to need to depose them.

10         THE COURT:  Well so you said that they named like --

11         MR. GOLINKIN:  They added disclosed -- they amended

12  their disclosures.

13         THE COURT:  They disclosed.  So then you know their

14  names --

15         MR. GOLINKIN:  So we now know their names and we're

16  figuring out who they are and whether or not -- but we

17  haven't -- so because of our disputes and we're attempting to

18  agree to an exchange of documents --

19         THE COURT:  Are they former employees or employees?

20         MR. GOLINKIN:  They are former employees, yes.

21         THE COURT:  So there's nothing stopping you from

22  calling them up on the phone and saying what do you know?

23         MR. GOLINKIN:  Your Honor, we are about -- we are in

24  the process of doing that.  We just want to make sure we

25  have -- there are some baseline documents we're attempting to

1    negotiate.  So really it's not we are going to depose 13

2    people.  It's simply at this stage we can't just wait and hope

3    that (indiscernible).  We wanted to get it on that record now

4    so that you're aware of the issue.  We're not necessarily

5    intending to take 13 depositions and, in fact, we discussed

6    with Mr. Reeb the possibility of basically stipulating to their

7    forensics experts.  But when he came back, he came back and

8    said -- that would have knocked out two depositions that we

9    were maybe needing to take.  He came back and said well, that's

10   okay, we're open to that but we still might call them at trial.

11   If they're going to call them at trial, I think we probably

12   need to depose them.

13          **MS. GODSEY:**  Your Honor, for clarification purposes

14   what he's referring to as our disclosures are simply are

15   initial disclosures, where we're required by the Rules to list

16   anyone who may have knowledge about the facts of the case.

17   They characterized that as our list of who we intend to call at

18   trial, --

19          **THE COURT:**  Okay.

20          **MS. GODSEY:**  -- which is simply not the case.  We've

21   just disclosed, as we would assume they would expect, anyone

22   who might have acc -- or might have knowledge about those

23   facts.  We did --

24          **THE COURT:**  So who are these people?  You added these

25   people recently though?

1          **MS. GODSEY:**  Of the list -- three of -- three of the

2     individual -- three of the members are the Individual

3     Defendants, plus Mr. Pintotzi and two other persons for S&K.

4     So six of the people on that list --

5          **THE COURT:**  Uh-huh.

6          **MS. GODSEY:**  -- are their direct --

7          **THE COURT:**  Okay.

8          **MS. GODSEY:**  -- witnesses that they can talk to

9     anytime they want.  The others are a couple of new current

10    employees that were not on the list previously.  They replaced

11    people who used to --

12         **THE COURT:**  Okay.

13         **MS. GODSEY:**  -- work at Dresser-Rand, as well as an

14    employee who is no longer an employee, but just recently

15    retired and was signed up for this disclosure.  They knew he

16    was involved.

17         **MR. REEB:**  And there's three folks, a Mr. Bach and a

18    Mr. Garfield, who are IT folks that allowed forensic computer

19    experts to come in and do images.  We don't have any -- they

20    know nothing aside from I let someone in to use the computers.

21    We don't intend to call them at trial, but according to our

22    Rule 26 disclosures, these people are referenced as having

23    permitted people, our experts access.  So we have to disclose

24    them to them.

25         **THE COURT:**  Uh-huh.

1          **MR. REEB:**  We've told them we think there's no reason

2     to depose those folks.  I don't know if they think there's a

3     reason to depose them.  There's an individual by the name of

4     Mike Barber (phonetic) who retired from Dresser-Rand many years

5     ago.  We had to list him because he appeared in emails.  We

6     have no interest in calling him at trial.  We don't think that

7     they've indicated any interest in calling him at trial.  I mean

8     there are three folks there that there's just -- they are in

9     the disclosures because they had to be.

10          **THE COURT:**  Well, that's fine.  I will give you three

11     additional depositions not to exceed two hours.

12          **MR. GOLINKIN:**  That will work.

13          **THE COURT:**  And call them up on the phone to see if

14     they know anything.

15          **MR. GOLINKIN:**  Absolutely.  That's --

16          **THE COURT:**  You know?  Sometimes they do and

17     sometimes they don't.

18          **MR. GOLINKIN:**  Thank you, Your Honor.

19          **THE COURT:**  All right.

20          **MR. REEB:**  Thank you very much, Your Honor.

21          **THE COURT:**  You all have a good day.

22          **MR. PIERCE:**  Thank you, Your Honor.

23          **THE COURT:**  Have a good day.

24          **MR. PIERCE:**  You too.

25          **THE COURT:**  You all may be excused.

**MR. GOLINKIN:** Thank you, Your Honor.

(This proceeding was adjourned at 1:59 p.m.)


CERTIFICATION


I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____          _April 12, 2017_


TONI HUDSON, TRANSCRIBER