IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DRESSER-RAND COMPANY | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:12-cv-184 |
| SCHUTTE & KOERTING ACQUISITION | § | |
| COMPANY, KANAKSINH ASHAR, | § | |
| ANTHONY JARDINE, and DOES 1-5, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## S&K's MOTION FOR SUMMARY JUDGMENT ON TRADE SECRET CLAIMS DUE TO COPYRIGHT PREEMPTION AND THE LACK OF REQUIRED PARTICULARIZED TRADE SECRET IDENTIFICATION

Dresser has refused to particularly identify its alleged trade secrets throughout the course of this 2012 lawsuit.

Defendants recently received the expert report upon which Judge Johnson said "the whole case hinges" and took the technical expert's deposition. The report and deposition made it clear why Dresser cannot identify its alleged trade secrets.

Dresser is not complaining about trade secret misappropriation at all. Dresser's complaints about Defendants activities are rooted in alleged **copying** and as its expert says "plagiarism" of software, spreadsheets, and documents. The copying is, if anything, copyright infringement which is a federal cause of action that pursuant to Fifth Circuit precedent preempts Dresser's state law trade secret claims. Therefore, as a matter of law Defendants are entitled to summary judgment on Dresser's trade secret claims.

To the extent that Dresser had any non-preempted trade secret cause of action (which it does not), then Dresser's failure to particularly describe any alleged trade secret at this late stage of the case means that Dresser's trade secret claims also fail as a matter of law. In any event Defendants are entitled to summary judgment on the trade secret claims which form the majority of this case.

<b><u>Table of Contents</u></b>

<b>Page</b>

I.  SUMMARY OF ARGUMENT .......................................................................... 1

II.  NATURE AND STAGE OF THE PROCEEDINGS .......................................... 2

III.  ISSUES TO BE RULED UPON AND STANDARD OF REVIEW ................................. 4

IV.  DRESSER'S TRADE SECRET CLAIMS ARE (1) PREEMPTED BY COPYRIGHT; AND (2) NOT PARTICULARLY DESCRIBED AS REQUIRED BY LAW ................. 4

    1.  The Original Complaint and First Amended Complaint Do Not Identify Alleged Trade Secrets ............................................................... 5

    2.  Dresser's Response to S&K's Motion for Partial Summary Judgment Does Not Identify Any Alleged Trade Secrets ........................................ 5

    3.  Dresser's Vague Interrogatory Answer (Version One) Does Not Identify Any Alleged Trade Secrets ............................................................ 7

    4.  S&K Seeks to Compel Identification of Dresser's Trade Secrets in July and August 2012 .......................................................................... 7

    5.  The Court Allows Dresser More Time ............................................... 8

    6.  Dresser Amends Its Interrogatory Answers on the Eve of a November 28, 2012 Hearing ............................................................................ 9

    7.  The Court Again Allows Dresser More Time To Identify ...................... 9

    8.  After the Stay Dresser Supplements Its Interrogatory Answers in December 2016 ........................................................................... 10

    9.  The Court Gives Dresser Its Final Chance to Identify Its Trade Secrets ............... 11

    10.  The Expert Report Still Does Not Identify the Alleged Trade Secrets ................. 12

V.  DRESSER REPEATEDLY FAILED TO IDENTIFY THE ALLEGED TRADE SECRETS DESPITE NUMEROUS REQUESTS ........................................... 14

    A.  Summary Judgment is Appropriate for Not Meeting the Trade Secret Particularity Requirement .............................................. 14

    B.  Dresser *Still* Has Not and Cannot Meet Any Required Particularity Test ...................................................................................... 15

VI.  CONCLUSION ............................................................................................ 19

HOU:3800176.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.M. Castle & Co. v. Byrne*,
    123 F. Supp. 3d 909, 912 (S.D. Tex. 2015) ............................................................4

*Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*,
    1 F. Supp. 3d 224, 257-59, 266 (S.D.N.Y. 2014), *aff'd*, 610 F. App'x 69 (2d
    Cir. 2015) ......................................................................................................14, 15

*Clearline Techs. Ltd. v. Cooper B-Line, Inc.*,
    No. H-11-1420, 2012 WL 43366 (S.D. Tex. Jan. 9, 2012)....................................17

*Freeman Inv. Mgmt. Co., LLC v. Frank Russell Co.*,
    No. 13-CV-2856 JLS (RBB), 2016 WL 5719819 (S.D. Cal. Sept. 30, 2016) ..................15, 19

*Hill v. Best Medical Int'l, Inc*.,
    2010 WL 2546023 (W.D. Pa. Jun. 24, 2010) ........................................................17

*IDX Sys. Corp. v. Epic Sys. Corp*.,
    285 F.3d 581 (7th Cir. 2002) ..........................................................................14, 18

*Imax Corp. v. Cinema Techs., Inc.*,
    152 F.3d 1161 (9th Cir. 1998) ..............................................................................14

*L-3 Comms. Corp. v. Jaxon Eng.'g & Maint., Inc.*,
    2011 WL 10858409 (D.Colo. Oct. 12 2011) ........................................................17

*Medafor, Inc. v. Starch Med. Inc.*,
    No. 09-CV-0441 PJS/FLN, 2009 WL 2163580 (D. Minn. July 16, 2009)............17

*PaySys Int'l, Inc. v. Atos Se*,
    No. 14-CV-10105 (KBF), 2016 WL 7116132 (S.D.N.Y. Dec. 5, 2016)................15

*Sit-Up Ltd. v. IAC/ InteractiveCorp*.,
    2008 WL 463884 (S.D.N.Y. Feb. 20, 2008)....................................................15, 19

*Spear Marketing, Inc. v. BancorpSouth Bank et al.*,
    791 F.3d 586 (5th Cir. 2015) ...........................................................1, 4, 5, 13

*StoneEagle Servs., Inc.*,
    No. 3:12-cv-1687-P, 2013 WL 9554563 (N.D. Tex. June 5, 2013) ................14, 16

HOU:3800176.1

*Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*,
    637 F.3d 604 (5th Cir. 2011) ................................................................................17

*TNS Media Research, LLC v. TRA Global, Inc.*
    977 F. Supp. 2d 281 (S.D.N.Y. 2013) ...........................................................15, 19

*United Servs. Auto. Ass'n ("USAA") v. Mitek Sys., Inc.*,
    289 F.R.D. 244 (W.D.Tex.2013), *aff'd*, 2013 WL 1867417 (W.D.Tex. Apr.24,
    2013) ................................................................................................................14, 16

*Zenimax Media, Inc. v. Oculus Vr, Inc.*,
    No. 3:14-CV-1849-P (BF), 2015 WL 11120582 (N.D. Tex. Feb. 13, 2015) ...................14, 16

**Statutes**

17 U.S.C. § 301 ...........................................................................................1, 5, 13

**Rules**

Fed. R. Civ. P. 56(a) .................................................................................................4

HOU:3800176.1

# I.    SUMMARY OF ARGUMENT

Defendants have unsuccessfully complained early and often throughout this case about the refusal and/or inability of Dresser to specifically identify its alleged trade secrets.[1]  On the eve of expert discovery Judge Johnson recognized this failure and admonished Dresser that, "this whole case hinges on that expert report, Ms. Godsey.  And so, you really need to, you know – we'll [be] waiting for it."[2]

Upon receiving the report upon which "the whole case hinges" and taking the technical expert deposition it became clear why Dresser has been struggling to identify even a single trade secret.  That is, Dresser is not complaining about trade secret misappropriation at all.  Instead, Dresser's complaints about Defendants activities are rooted in alleged **copying** of software, spreadsheets, and documents.  This copying is, if anything, copyright infringement which is a federal cause of action that preempts Dresser's state law trade secret claims.  Dresser's copyright allegations disguised as trade secret claims must be dismissed under controlling Fifth Circuit precedent.  *See, e.g., Spear Marketing, Inc. v. BancorpSouth Bank et al.*, 791 F.3d 586 (5th Cir. 2015) (holding that state law claims based on copying of ideas fixed in tangible media are preempted by 17 U.S.C. § 301).

Moreover, even after Dresser expressly promised this Court that its expert report would finally specify the alleged trade secrets, it did not.[3]  Instead, consistent with Dresser not being able to particularize a trade secret and only reference document copying throughout this case, the

---

[1]  Defendants' numerous efforts to force Dresser to identify its alleged trade secrets span from 2012-2017 and are described in great detail on pages 4 to 13 herein.

[2]  Dkt. 103, Transcript of February 21, 2017 hearing at 51:3-5.

[3]  Of course, an independent reason that the expert could not identify trade secrets is because (as he was forced to admit) he had not investigated even one of the six factors required to prove a trade secret under Texas law.  See Dkt. 142, S&K's Motion To Exclude the Unreliable And Unsupported Expert Testimony of Dresser's Technical Expert Meherwan P. Boyce.

expert report characterizes the alleged trade secrets as "the theft of an entire business"[4]. The report then repeatedly refers to Defendants' alleged **copying**[5], "**plagiarized** Maintenance and Operating instructions"[6], and "**plagiarized** Valve Piping Recommendations, Recommended Preventative Maintenance Instructions, and Blowdown Kit Installation Instructions".[7] Of course, copying and plagiarism are not the subject of trade secret cases, but rather, are preempted by copyright. And in any event, Dresser's failure to particularly describe any alleged trade secret at this late stage of the case means Dresser's trade secret claims fail as a matter of law as described below.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

This action involves the alleged misappropriation of trade secrets relating to valves including the oil operated trip throttle valve ("OOTTV"). At the outset, Judge Miller denied Dresser's request for a preliminary injunction since Dresser could not establish the requisite elements to prevail on, *inter alia*, a trade secret misappropriation claim for the OOTTV product at issue.[8] In doing so Judge Miller found that S&K had a "design for an OOTTV that was active in the 1970's. It has many similarities to the present day Gimpel valve."[9] The Court also found that "[i]t is an open question whether the historical documents [from Dressser's predecessors] qualify as trade secrets."[10]

---

[4]    Dkt. 143, Boyce March 2017 Report, p. 10.

[5]    Dkt. 143, Boyce March 2017 Report, pp. 25, 26, 27, 42, 44, 45, 46, 48, 52, 53.

[6]    Dkt. 143, Boyce March 2017 Report, p. 45.

[7]    Dkt. 143, Boyce March 2017 Report, p. 47.

[8]    Dkt. 16 (stating, "...Dresser-Rand has failed to carry its burden to demonstrate a likelihood of success on the merits on its claims against S&K.").

[9]    Dkt. 16 at 6.

[10]    Dkt. 16 at 13.

Struggling to prove any specific trade secret when none of the documents at issue were even stamped "confidential"[11], Dresser initiated a criminal investigation by the U.S. government and then noticed depositions of the individuals being investigated. Judge Miller stayed the case in 2013 after S&K pointed out that Dresser was trying to force the individuals to assert their Fifth Amendment rights which would result in an adverse inference advantage for Dresser in the civil case.[12]

The case re-opened in 2016 after the government declined Dresser's invitation to prosecute. Since then Defendants repeatedly asked the Court to compel Dresser to specifically identify its alleged trade secrets instead of simply pointing to a pile of documents not stamped "confidential" that were allegedly copied. In response to those complaints, in February 2017 and with expert reports looming, Judge Johnson first asked Dresser to confirm that "the documents that [Dresser] kept secret" were "all going to be contained in the expert report."[13] Judge Johnson then warned Dresser "that this whole case hinges on that expert report" due in March 2017.[14]

Defendants recently took the expert's deposition on the March 2017 report on which "this whole case hinges." As explained in detail below, Defendants discovered that despite the expert report's reference to alleged "trade secret(s)" over 30 times, its expert still does not identify any specific trade secrets with any sort of particularity. What's more, the expert report is really directed at copyright infringement which preempts any trade secret claim.

---

[11]  Dkt. 66, Sealed Ex. A, DR-688-690 Dresser policy entitled "Trade Secret Protection.") (Dresser's strict company policy required *all* documents containing trade secrets to be stamped "confidential.").

[12]  Dkt. 68.

[13]  Dkt. 103, Transcript of February 21, 2017 hearing at 46:18-23.

[14]  Dkt. 103, Transcript of February 21, 2017 hearing at 51:3-5.

HOU:3800176.1

## III.   ISSUES TO BE RULED UPON AND STANDARD OF REVIEW

S&K seeks summary judgment on Dresser's misappropriation of trade secrets claim because (1) Dresser's "trade secret" claims are preempted by copyright and (2) Dresser has repeatedly failed to identify its trade secrets with reasonable particularity as required by law.

Summary judgment is appropriate when, "viewing the evidence in the light most favorable to the nonmovant, the court determines that the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *A.M. Castle & Co. v. Byrne*, 123 F. Supp. 3d 909, 912 (S.D. Tex. 2015) (citing Fed. R. Civ. P. 56(a)) (internal quotation omitted); *see also Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 599 (5th Cir. 2015).

## IV.   DRESSER'S TRADE SECRET CLAIMS ARE (1) PREEMPTED BY COPYRIGHT; AND (2) NOT PARTICULARLY DESCRIBED AS REQUIRED BY LAW

Dresser's Original Complaint asserted a misappropriation claim, but it did not identify what trade secrets Defendants are supposed to have misappropriated. Instead, it claimed that the Individual Defendants "had access to" a series of broad categories of information (which it called "trade secrets") that effectively encapsulated the entire Gimpel business. This first "identification" provided no detail and made it impossible for Defendants to challenge effectively whether the alleged trade secrets were either "secret" or "misappropriated."

To mount a defense, Defendants need to know what they are alleged to have misappropriated. Therefore, since 2012, much of the lawsuit has been spent trying to obtain a reasonably particular identification of Dresser's alleged trade secrets. Despite Defendants' extensive and expensive efforts, Dresser to this day can only bring itself to allege "copying" of a collection of documents and computer spreadsheets that it considers its alleged "trade secrets".

However, as a matter of law state law claims based on copying of ideas fixed in tangible media are preempted by 17 U.S.C. § 301 of the copyright statute. *Spear Marketing, Inc. v. BancorpSouth Bank et al.*, 791 F.3d 586 (5th Cir. 2015) (holding that state law claims based on copying of ideas fixed in tangible media are preempted by 17 U.S.C. § 301).

The underlying facts that unequivocally prove that Dresser's trade secret claims are preempted as a matter of law are described in detail below in the context of the lengthy history of Defendants' efforts to force Dresser's identification of its alleged "trade secrets".

### 1. The Original Complaint and First Amended Complaint Do Not Identify Alleged Trade Secrets

Dresser filed its Original Complaint in January 2012 and followed up with its First Amended Complaint a month later. Dresser merely asserted its "trade secrets" include "technical drawings such as parts, materials, measurements, and other details and historical information related to the design and manufacture of the Gimpel® OOTTV that was not known outside of Dresser-Rand."[15]

### 2. Dresser's Response to S&K's Motion for Partial Summary Judgment Does Not Identify Any Alleged Trade Secrets

Failing to understand how Dresser could lose the preliminary injunction and still somehow continue to claim any trade secrets on a valve that S&K designed and that had been publicly available for many years, S&K moved early for summary judgment.[16] Even though Dresser had the full S&K design file and all S&K's technical drawings for the S&K valve at issue, Dresser responded and complained it could not even identify its own trade secrets. Dresser said that liability "rests on whether or not S&K used any of the hundreds (if not

---

[15] Dkt. 1, Original Complaint at Paragraph 68 and Dkt. 22, First Amended Complaint at Paragraph 80.

[16] Dkt. 33, MSJ of April 30, 2012.

HOU:3800176.1

thousands) of files" allegedly taken.[17]   Moreover, in opposing the motion Dresser refused to specify its trade secrets and instead identified "categories" of alleged trade secrets:

> "(1) the confidential information contained in the job order list, drawings, bills of material, and other technical specifications, downloaded or otherwise taken by Dresser-Rand's former employees; (2) the compilations of technical data and customer information taken by Dresser-Rand's former employees; and (3) the confidential knowledge regarding the Gimpel® valve design and previous customer installations taken by Dresser-Rand's former employees."[18]

Even this vague description, however, was too specific for Dresser's comfort.  Dresser also argued:

> "the files taken by Dresser-Rand's former employees constitute, in essence, a **library** that provides a **blue print** for manufacturing Gimpel® valves to meet a variety of operating conditions without having to reinvent the wheel with each order."[19]

In hindsight Dresser's reference to libraries and blue prints is a hint that what Dresser was really complaining about was not trade secrets, but rather, copyrights.

The Court ultimately denied the summary judgment without prejudice to allow Dresser to conduct the additional discovery it claimed it needed.[20]   However, in doing so the Court specifically contemplated that the discovery was for the express purpose of Dresser identifying its trade secrets stating: "***This [discovery] would allow Dresser-Rand to identify, which, if any, of its trade secrets were used by S&K.***"[21]   The battleground to have Dresser identify its trade secrets then shifted to written discovery and multiple motions to compel.

---

[17]   Dkt. 37.

[18]   Dkt. 37 at 5-6.

[19]   Dkt. 37 at 6-7.

[20]   Dkt. 40.

[21]   Dkt. 40 (emphasis added).

HOU:3800176.1

### 3. Dresser's Vague Interrogatory Answer (Version One) Does Not Identify Any Alleged Trade Secrets

Dresser was asked in an interrogatory to:

> [i]dentify in detail each trade secret concerning the design or manufacture of the OOTTV that you contend Ashar and/or Jardine has either misappropriated or wrongfully appropriated, disclosed and/or used, including any trade secret regarding the design, components, dimensions, tolerances, sizes, materials, formulas, manufacture, or other characteristics of the OOTTV."[22]

Dresser objected stating:

> Dresser-Rand objects to Interrogatory No. 1 as a premature contention interrogatory that requires information in the possession of defendants. Subject to the foregoing objections, and without waiving same, Dresser-Rand *elects to produce all responsive, relevant, and nonprivileged documents in its possession, custody, or control from which an answer to this interrogatory may be determined under separate cover.*[23]

The documents Dresser "elected to produce" as its alleged "trade secrets" included every single document–e.g. more than 100,000 documents–that S&K had already produced to Dresser from the personal computers of the Individual Defendants. In other words, Dresser claimed that its "trade secrets" were the 100,000 plus copied documents. In hindsight, this complaint about copied documents shows that Dresser (knowingly or unknowingly) was in reality complaining about some potential copyright cause of action as opposed to any trade secret claim which, of course, would be preempted.

### 4. S&K Seeks to Compel Identification of Dresser's Trade Secrets in July and August 2012

In July 2012, S&K submitted a letter to the Court referencing Dresser's interrogatory response (or lack thereof) above and outlining its concern about Dresser's ongoing refusal to "specifically identify its alleged trade secrets while continuing to burden Defendants with

---

[22]   Ex. 1, Dresser's May 21, 2012 Interrogatory Answers at 3.

[23]   Ex. 1, Dresser's May 21, 2012 Interrogatory Answers at 3. (emphasis added).

potentially irrelevant and burdensome discovery requests."[24]  Dresser responded again without identifying a particular trade secret, but arguing that S&K "is well aware of what trade secrets are involved in this case: **the detailed drawings and other computer files** that Ashar and Jardine downloaded from Dresser-Rand's computer system just before quitting and going to work for S&K...."[25]  S&K followed up with another letter to the Court in August 2012.[26]

### 5. The Court Allows Dresser More Time

Dresser's ongoing refusal to identify its trade secrets was the subject of an August 2012 hearing.  The Court did not grant Defendants' relief instead stating "at this point, I'm not going to make Dresser-Rand amend their interrogatories any more than they have already disclosed to you what's going on in this case."[27]

However, the Court also made clear that ultimately Dresser would need to identify its alleged trade secrets.  In an exchange with opposing counsel, Judge Johnson stated that [Defendants' lawyers] are "telling me [their] position that at some point, [Dresser] *is going to have to put [its] finger on what the trade secrets violations are.*  And I said *yes, I agree, at some point [Dresser will have to]*."[28]

The Court also asked Dresser "what do you need to do to finish your discovery relative to [the alleged misappropriated trade secrets]?"[29]  Dresser's lawyer responded that would be a "month long process."[30]

---

[24]  Ex. 2,  Defendants' Letter of July 26, 2012.

[25]  Dresser's Letter of July 25, 2012.

[26]  Ex. 3, S&K's Letter of August 1, 2012.

[27]  Dkt. 86, August 26, 2012 transcript at 11:10-13.

[28]  Dkt. 86, August 26, 2012 transcript at 13:21-24.

[29]  Dkt. 86, August 26, 2012 transcript at 14:25-15:3.

### 6. Dresser Amends Its Interrogatory Answers on the Eve of a November 28, 2012 Hearing

On November 27, 2012, Dresser served its First Supplemental Answers to the Individual Defendants' First Set of Interrogatories.[31] Dresser added words, but not substance, to its previous description of its trade secrets. Specifically, Dresser now continued to reference documents as opposed to any specific trade secrets and included a list of 13 general categories of documents that Dresser claims are its alleged trade secrets.[32]

### 7. The Court Again Allows Dresser More Time To Identify

On November 28, 2012, Judge Johnson held another hearing. Defendants again raised the issue of Dresser's insufficient trade secret identification with the Court:

> We've been asking since May, please identify your trade secrets in your valve. The valve's thirty years old; you've owned it and, purportedly, all this proprietary information for at least five years. It shouldn't be difficult for you to give us a list of all the trade secrets, allow us to identify it so our experts can even look at what they believe to be a trade secret. And all we get was, last night, we get a summary of, of parts, just general lists, which—which isn't a sufficient identification of trade secrets. I can't understand how it's taken them seven months to give us a general list, and they can't even give us a specific list to sufficiently identify the trade secrets as required by Texas law.[33]

The Court again declined to intervene, stating that "I think ***at this point*** — you know — you're ident [sic]— you've got enough information to figure out where this lawsuit is going."[34]

---

[30] Dkt. 86, August 26, 2012 transcript at 15:10-14.

[31] Ex. 4, Dresser's First Supplemental Responses and Objections to the Individual Defendants First Set of Interrogatories.

[32] Ex. 4, Dresser's First Supplemental Responses and Objections to the Individual Defendants First Set of Interrogatories at 3-6.

[33] Dkt. 56, Transcript of November 28, 2012 Hearing at 11:12-25.

[34] Dkt. 56, Transcript of November 28, 2012 Hearing at 14:20-22. (emphasis added).

HOU:3800176.1

**8.  After the Stay Dresser Supplements Its Interrogatory Answers in December 2016**

After a three-and-a-half year stay, this case resumed in July of 2016.[35]  In December 2016 Dresser served its First Supplemental Answers to S&K's Interrogatories.[36]  Interrogatory 1 stated:

> identify in detail every fact . . . "that supports your allegations . . . that S&K used Dresser-Rand's *trade secrets* 'to develop its other valve products.[37]

Notwithstanding that Dresser was in possession of S&K's computer files, as well as its entire design file for the OOTTV, over 4 years, Dresser objected to the Interrogatory as premature stating:

> Interrogatory No. 1 is a "*premature* contention interrogatory that requires information in possession of defendants, is unduly burdensome to the extent that it purports to require marshaling of all facts, documents, and evidence, and purports to require attorney mental impressions which is work product."[38]

Refusing to respond to Interrogatory No. 1 and identify any alleged trade secrets, Dresser-Rand said it "elected" to "produce a *sampling* of the responsive, relevant, and non-privileged documents" in its possession "from which an answer to this interrogatory may be determined herein, with additional and cumulative evidence supporting each of Dresser-Rand's claims produced under separate cover."[39]  Dresser then stated that it "responds by highlighting a sampling *of the thousands of communications* proving a sequence of events involving the misappropriation and use of Gimpel trade secret and proprietary information in support of

---

[35] While the civil case was stayed, Dresser continued to encourage the federal government to prosecute the individual defendants for the alleged misappropriation of its "trade secrets".  The stay was lifted only after the federal government confirmed it was not prosecuting any such claims.

[36] Ex. 5,  Dresser Rand Company's Answers to Defendant Schutte And Koerting's Interrogatories.

[37] Ex. 5,  Dresser Rand Company's Answers to Defendant Schutte And Koerting's Interrogatories at 3.

[38] Ex. 5,  Dresser Rand Company's Answers to Defendant Schutte And Koerting's Interrogatories at 3.

[39] Ex. 5,  Dresser Rand Company's Answers to Defendant Schutte And Koerting's Interrogatories at 3.

10

S&K's mechanical latch valve business."[40]  Dresser's "sampling" consisted of ten emails not one of which pertained to any specifically identified trade secret.[41]

### 9.     The Court Gives Dresser Its Final Chance to Identify Its Trade Secrets

On January 27, 2017, counsel for Defendants wrote to Dresser pointing out the various deficiencies in Dresser's response to S&K's Interrogatories and requesting that Dresser supplement its answers to S&K's Interrogatories.  Dresser refused and in February 2017–over five years after Dresser initiated this case–Defendants once again were forced to write to the Court concerning Dresser's insufficient identification of its alleged trade secrets.[42]

At a February 21, 2017 hearing, counsel for S&K described the prejudicial effect of Dresser's continuing refusal to identify its alleged trade secrets:

> MR. OSBORNE: But we got this problem, too, that their interrogatory answer and what are your trade secrets; they chose to answer via documents.  And Rule 26 says that when you answer via documents, you have to specifically identify the documents so that you can see what the trade secrets are.  They've alleged that they provided a narrative response, but as we explained when you actually read their so-called narrative response it really is just a narrative that points to documents; says, the trade secrets are found in categories of documents and types of files such as.  And it just provides this blanket list of basically everything. So, this fundamental key issue to the case remains unresolved, which is, what are their trade secrets, which is very hard for us to defend the case if we don't know what they've were trade secrets in the materials that were taken.[43]

The Court reviewed Dresser's Interrogatory Answer and had the following exchange with Dresser's counsel about its alleged trade secret identification:

> THE COURT: Well, in looking at the Answer to Interrogatory No. 1, when they're citing documents that would show the trade secrets, I'm assuming then that the names of the vendors and the cost are trade secrets, that customer

---

[40]   Ex. 5,  Dresser Rand Company's Answers to Defendant Schutte And Koerting's Interrogatories at 3.

[41]   Ex. 5,  Dresser Rand Company's Answers to Defendant Schutte And Koerting's Interrogatories at 3.

[42]   Ex. 6, S&K letter of February 10, 2017 to Court.

[43]   Dkt. 103, Transcript of February 21, 2017 at 44:17-45:7.

specifications are trade secrets, tolerances, assembly details — I mean – is that right?

MS. GODSEY: Yes, Your Honor. That's correct. For example, there were job lists that Dress-Rand kept that contained every valve that particular company, ever sold leading back to the early 1900s, who it was sold to, what type of valve, where it went, how much it cost. Indeed, there were multiple versions that were kept over time, and these were documents that the Defendant stole and admitted last week that they referenced in order to provide S&K competitor pricing information, so that presumably they got it at Dresser-Rand.

THE COURT: And these are documents that you kept secret, I guess is the point?

MS. GODSEY: Yes, Your Honor.

THE COURT: Well, *I'm assuming that's all going to be contained in the expert report.*

MS. GODSEY: Yes, Your Honor.

THE COURT: Okay. *You're [referring to Mr. Osborne] going to find out then.*

MR. OSBOURNE: Thank you, Your Honor.[44]

Based on Dresser's representation that it would finally identify its trade secrets in its March 2017 expert report, the Court declined to compel Dresser to amend its Interrogatory response. However, later in the hearing the Court returned to the subject to underscore the importance of Dresser following through on its promise to finally identify its trade secrets, telling Dresser's lawyer that "*this whole case hinges on that expert report, Ms. Godsey*. And so, you really need to, you know – we'll [be] waiting for it."[45]

### 10. The Expert Report Still Does Not Identify the Alleged Trade Secrets

On March 27, 2017, Dresser served the expert report of Dr. Meherwan P. Boyce.[46] Instead of identifying any specific alleged trade secrets in his report, Boyce identified Dresser's

---

[44]  Dkt. 103, Transcript of February 21, 2017 at 45:25-47:25.

[45]  Dkt. 103, Transcript of February 21, 2017 at 51:3-5.

[46]  Dkt. 143, Boyce March 2017 Report .

trade secrets as:

> "**the entire Gimpel® business** process for designing, manufacturing, testing, pricing, quoting, offering to sell, selling, installing, and servicing Gimpel® valves, including engineering drawings (including part drawings), manufacturing techniques, assembly procedures, bills of materials ("BOMs"), test procedures, engineering designs, patterns, price lists and information, customer lists, and computer programs and spreadsheets used to perform calculations regarding valve tolerances/sizing and to perform other calculations to permit S&K to satisfy valve orders, including Paradox (collectively, the "Trade Secrets"). This was not just the theft of a design but the theft of an entire business. The scope of information taken by the Defendants would never exist in a compilation outside of Dresser-Rand without having been stolen by someone within Dresser-Rand having complete **access**."[47]

The report again confirms that Dresser cannot identify and particularize any alleged trade secret because Dresser's gripes about Defendants are steeped in copyright and not trade secret claims which are preempted. To this end, the report repeatedly refers to the two elements of copyright -- "access" and "copying." That is, Defendants alleged "access"[48] is referred to no less than 16 times and alleged "copy" or "copied[49]" is referred to no less than 18 times in the report. As further evidence that Dresser is complaining about copyright vs. trade secrets the report refers to "**plagiarized** Maintenance and Operating instructions"[50], and "**plagiarized** Valve Piping Recommendations, Recommended Preventative Maintenance Instructions, and Blowdown Kit Installation Instructions".[51]

It is elementary that plagiarism is a copyright cause of action as opposed to any sort of trade secret cause of action. And it is established Fifth Circuit law that any alleged trade secret claim is preempted by copyright law pursuant to controlling Fifth Circuit precedent. See *Spear*

---

[47]   Dkt. 143, Boyce March 2017 Report at 10, 35.

[48]   Dkt. 143, Boyce March 2017 Report at 10, 36, 39, 42, 44, 45, 46, 48, and 49.

[49]   Dkt. 143, Boyce March 2017 Report at 25, 26, 27, 42, 44, 45, 46, 48, 52, and 53.

[50]   Dkt. 143, Boyce March 2017 Report at p. 45.

[51]   Dkt. 143, Boyce March 2017 Report at p. 47.

13

*Marketing, Inc. v. BancorpSouth Bank et al.*, 791 F.3d 586 (5th Cir. 2015) (holding that state law claims based on copying of ideas fixed in tangible media are preempted by 17 U.S.C. § 301). Thus, Dresser's trade secret claims should be summarily dismissed as a matter of law. Moreover, even if there were not preemption by copyright, then summary judgment on Dresser's trade secret claims is appropriate due to its failure to specify and prove the existence of any particularized alleged trade secret as described below.

## V.   DRESSER REPEATEDLY FAILED TO IDENTIFY THE ALLEGED TRADE SECRETS DESPITE NUMEROUS REQUESTS

Summary judgment on Dresser's trade secret claims is also appropriate due to its failure to specify and prove the existence of any particularized alleged trade secret.

### A.   Summary Judgment is Appropriate for Not Meeting the Trade Secret Particularity Requirement

Federal courts hearing trade secret claims have consistently held that during discovery the plaintiff must identify the allegedly misappropriated trade secrets with particularity or risk dismissal on summary judgment. *See, e.g., Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, (9th Cir. 1998); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, (7th Cir. 2002). In fact, contrary to the tortuous history of this case, many Texas federal courts have recently begun requiring trade secret identification before discovery is even allowed so that plaintiff does not craft its alleged trade secrets to simply cover what Defendant is doing.[52]

"Before analyzing whether Plaintiff has a trade secret, [courts] first consider [] whether Plaintiff has described its trade secret with sufficient particularity, both at the time of disclosure and throughout the litigation." *Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F.

---

[52] *See StoneEagle Servs., Inc.,* No. 3:12-cv-1687-P, 2013 WL 9554563, at *4 (N.D. Tex. June 5, 2013); *United Servs. Auto. Ass'n ("USAA") v. Mitek Sys., Inc.*, 289 F.R.D. 244 (W.D.Tex.2013), *aff'd*, 2013 WL 1867417 (W.D.Tex. Apr.24, 2013); *Zenimax Media, Inc. v. Oculus Vr, Inc*., No. 3:14-CV-1849-P (BF), 2015 WL 11120582, at *3 (N.D. Tex. Feb. 13, 2015).

Supp. 3d 224, 257-59, 266 (S.D.N.Y. 2014), *aff'd*, 610 F. App'x 69 (2d Cir. 2015). "The requirement of particularity exists for the simple reason that a defendant must know what constitutes a plaintiff's trade secret, so that it does not infringe upon that trade secret and so that the defendant can defend itself at any trial." *Id*. at 257.

Across jurisdictions, courts routinely hold that a plaintiff's failure to identify its alleged trade secrets with adequate particularity is grounds for summary judgment as a matter of law. *See id*. at 266 (granting motion for summary judgment because "[t]he [trade secret] definitions are not sufficiently particular, and thus [plaintiff's] claim fails"); *PaySys Int'l, Inc. v. Atos Se*, No. 14-CV-10105 (KBF), 2016 WL 7116132, at *10-12 (S.D.N.Y. Dec. 5, 2016) (granting summary judgment where plaintiff had repeated opportunities to specify its trade secrets with particularity but failed to do so); *Freeman Inv. Mgmt. Co., LLC v. Frank Russell Co*., No. 13-CV-2856 JLS (RBB), 2016 WL 5719819, at *10 (S.D. Cal. Sept. 30, 2016) (granting summary judgment where plaintiff had repeated opportunities to identify its trade secrets, plaintiffs' "identification" comprised a reference to voluminous documents and his written description "us[ed] broad and categorical terms" and "subjective and vague descriptions"); *Sit-Up Ltd. v. IAC/ InteractiveCorp*., 2008 WL 463884, at *9 (S.D.N.Y. Feb. 20, 2008); *TNS Media Research, LLC v. TRA Global, Inc.* 977 F. Supp. 2d 281, 313-14 (S.D.N.Y. 2013).

### B.    Dresser *Still* Has Not and Cannot Meet Any Required Particularity Test

At the February 21 hearing, Judge Johnson observed that Dresser's "entire case" turned on the content of Boyce's expert report. Despite this warning, Dresser again failed to put forth a reasonably particular description of its alleged trade secrets.

Federal courts in Texas have repeatedly specifically defined and repeatedly stated what will not suffice as reasonable particularity of an alleged trade secret: "(1) laundry list of general categories, (2) lengthy, descriptive, but non-specific paragraphs, (3) generally listing software,

algorithms, and processes that a plaintiff developed, (4) disclosures that only reveal the end results of, or functions performed by, the claimed trade secrets, or (5) concepts, elements, or components that make up designs." *StoneEagle Servs., Inc.*, No. 3:12-cv-1687-P, 2013 WL 9554563, at *4 (N.D. Tex. June 5, 2013) (citing *United Servs. Auto. Ass'n ("USAA") v. Mitek Sys., Inc.*, 289 F.R.D. 244 (W.D.Tex. 2013), *aff'd*, 2013 WL 1867417 (W.D.Tex. Apr. 24, 2013)); *Zenimax Media, Inc. v. Oculus Vr, Inc.,* No. 3:14-CV-1849-P (BF), 2015 WL 11120582, at *3 (N.D. Tex. Feb. 13, 2015).

Applying the above test, Dresser's final chance at trade secret identification (its expert's "identification") fails. Dresser's expert described its alleged trade secrets as:

> "the entire Gimpel® business process for designing, manufacturing, testing, pricing, quoting, offering to sell, selling, installing, and servicing Gimpel® valves, including engineering drawings (including part drawings), manufacturing techniques, assembly procedures, bills of materials ("BOMs"), test procedures, engineering designs, patterns, price lists and information, customer lists, and computer programs and spreadsheets used to perform calculations regarding valve tolerances/sizing and to perform other calculations to permit S&K to satisfy valve orders, including Paradox (collectively, the "Trade Secrets"). *This was not just the theft of a design but the theft of an entire business.* The scope of information taken by the Defendants would never exist in a compilation outside of Dresser-Rand without having been stolen by someone within Dresser-Rand having complete access."[53]

Boyce's "identification" of Dresser's trade secrets meets at least four out of the five examples of identifications that the *StoneEagle* case held were inappropriate as a matter of law. Moreover, Boyce's inclusion above of the fourteen general categories of documents[54] also violates *StoneEagle's* prohibition on laundry lists of general categories of documents (prohibited

---

[53] Dkt. 143, Boyce March 2017 Report at 10, 35.

[54] Dkt. 143 at 10, 35 stating 14 categories: "engineering drawings (including part drawings), manufacturing techniques, assembly procedures, bills of materials ("BOMs"), test procedures, engineering designs, patterns, price lists and information, customer lists, and computer programs and spreadsheets used to perform calculations regarding valve tolerances/sizing and to perform other calculations to permit S&K to satisfy valve orders, including Paradox (collectively, the "Trade Secrets")".

HOU:3800176.1

example one) and its rule against listing "concepts, elements, or components that make up designs." Similarly, Boyce's assertion that "the entire Gimpel® business process" is somehow a trade secret violates *StoneEagle's* prohibition of "generally listing . . . processes that a plaintiff developed" (prohibited category three) as well as *StoneEagle's* prohibition of "disclosures that only reveal the end results of, or functions performed by, the claimed trade secrets."

Such general categories are not sufficient as a matter of law. *See, e.g., Clearline Techs. Ltd. v. Cooper B-Line, Inc.,* No. H-11-1420, 2012 WL 43366, at *11 (S.D. Tex. Jan. 9, 2012) (finding that plaintiff's use of the phrase "technical and financial information" failed to identify trade secrets with sufficient particularity); *Medafor, Inc. v. Starch Med. Inc.,* No. 09-CV-0441 PJS/FLN, 2009 WL 2163580, at *1 (D. Minn. July 16, 2009) (finding that plaintiff's use of the phrases "methodologies, formulas, devices, and compilations of information" failed to identify trade secrets with sufficient particularity); *Hill v. Best Medical Int'l, Inc*., 2010 WL 2546023, at *4 (W.D. Pa. Jun. 24, 2010) ("general allegations and generic references to products are insufficient to satisfy . . . burden of identifying its misappropriated trade secrets with 'reasonable particularity'"); *L-3 Comms. Corp. v. Jaxon Eng.'g & Maint., Inc*., 2011 WL 10858409, at *2 (D.Colo. Oct. 12 2011) ("generic references to products or information are insufficient to satisfy the reasonable particularity standard.").

Boyce's report also fails to exclude information that *cannot be a trade secret*–e.g. design elements from expired OOTTV patents which are publicly available and cannot contain "trade secrets" as a matter of law–from the information it maintains is genuinely unique. *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.,* 637 F.3d 604, 612 (5th Cir. 2011) (under Texas law, a published patent application destroys the secrecy of its contents for the purposes of an action for misappropriation). During his deposition, Boyce testified that the design of Gimpel OOTTV

"looks nearly the same" as the design contained in the 1980s OOTTV patent.[55]  Yet despite this admission, Boyce's expert report specifically identifies "the entire Gimpel® business process for designing" the OOTTV as trade secrets.[56]  In sum, Boyce's "identification of Dresser's trade secrets" is "both too vague and too inclusive, effectively asserting that all information in or about its [product] is a trade secret.  That's not plausible." *IDX Sys.* 285 F.3d. at 583.

Summary judgment is quite usual in cases like this one where the plaintiff had numerous opportunities to identify its trade secrets and failed to do so.  In *PaySys Int'l, Inc. v. Atos Se*, the court granted summary judgment on the plaintiff's trade secrets claim because the procedural history revealed that plaintiff "ha[d] attempted throughout this litigation to avoid identifying which [of its] trade secrets claims are at issue." 2016 WL 7116132 at *10-12. In reaching its decision, the *PaySys Int'l* court called attention to the fact that six months after being served with an interrogatory and a year and a half after filing suit, plaintiff still provided an unacceptably vague "identification" of its trade secrets.  *Id.*  The court specifically rejected the plaintiff's complaint that at least some of the information it had identified contained trade secrets, noting that the plaintiff could not "avoid its obligation to carefully delineate precisely what in fact remains secret by designating 'all' of its source code as secret," especially when the plaintiff had licensed the produce and portions of it were indisputably in the public domain. *Id.* at *11.

Similarly, in *Freeman Investment Mgt. Co., LLC v. Frank Russell Co.*, the court granted summary judgment with respect to a plaintiff's trade secret misappropriation claim because the plaintiff failed to identify the alleged trade secrets with the necessary particularity, even after the court warned the plaintiff that its "identification"-which comprised a reference to voluminous

---

[55]   Ex. 7, Boyce Deposition Transcript at 35:18-20.

[56]   Ex. 7, Boyce Deposition Transcript at 10, 35.

HOU:3800176.1

documents and a written description which "us[ed] broad and categorical terms" and "subjective and vague descriptions"-was too vague. 2016 WL 5719819, at *10-12. In reaching its conclusion, the court rejected the plaintiff's assertion that its description included some trade secrets. In an explanation especially relevant to this case, the court noted that the plaintiff, having identified numerous alleged trade secrets, could not rely on the assertion at the end of the case that "'it's in here somewhere' to identify some legitimate trade secrets out of the morass." *Id.* at *11.

Dresser has failed to identify its trade secrets for a period of time three times longer than in *PaySys Int'l*, and has provided no better description than the general description in *Freeman Investment*. As in those cases, the Court should enter summary judgment in favor of Defendants and against Dresser on the trade secret claims as a result of Dresser's blatant inability and refusal to identify any particular trade secrets.

## VI. <u>CONCLUSION</u>

In sum, Dresser's trade secrets claims are preempted by copyright. Even if they are not, then Dresser's "'Dance of the Seven Veils approach to [its] trade secrets claim' is manifestly prejudicial to [Defendants], and taxing on the Court." *TNS Media Research*, 977 F. Supp. 2d at 313 (quoting *Sit-Up Ltd*., 2008 WL 46884 at *9). "[Dresser] has had ample opportunity to identify its alleged trade secrets with specificity [during] discovery. Because it has failed to do so, its trade secrets claim [must be] dismissed." *Id.* at 313-14. S&K respectfully requests that this Court grant the motion and dismiss Dresser's trade secret claims.

HOU:3800176.1

Respectfully submitted,

**ANDREWS KURTH KENYON LLP**

By: */s/ Gregory L. Porter*
    Gregory L. Porter
    State Bar No. 24002784
    Federal I.D. No. 34185
    600 Travis, Suite 4200
    Houston, Texas 77002
    713-220-4621
    713-220-4285 (Fax)
    gregporter@andrewskurth.com

    ATTORNEY-IN-CHARGE FOR DEFENDANT
    SCHUTTE & KOERTING ACQUISITION
    COMPANY

OF COUNSEL:

Eric G. Osborne
State Bar No. 24088165
Federal ID No. 2109359
Joseph W. Golinkin II
State Bar No. 24087596
Federal I.D. No. 2515657
Connell C. Hess
State Bar No. 24101908
Federal ID No. 3061860
Andrews Kurth Kenyon LLP
600 Travis, Suite 4200
Houston, Texas 77002
713-220-4200
713-238-4285 (Fax)
ericosborne@andrewskurth.com
jebgolinkin@andrewskurth.com

Daniel R. Utain
Kaplin Stewart Meloff Reiter & Stein, P.C.
P.O. Box 3037
Blue Bell, Pennsylvania 19422
610-941-2582
610-684-2032 (Fax)
dutain@kaplaw.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 23rd day of June, 2017. I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of this filing to the following attorneys of record who are filing users of the Court's Electronic Filing System:

| | |
|---|---|
| Kyle C. Reeb | David K. Anderson |
| Jonathan Pierce | Julie B. Cunningham |
| Kerry McMahon | Anderson & Cunningham |
| Jaimie L. Godsey | 1221 Lamar, Suite 1115 |
| Porter Hedges, LLP | Houston, Texas 77010 |
| 1000 Main Street, 36th Floor | |
| Houston, Texas 77002 | Counsel for Defendants |
| | Kanaksinh Ashar and Anthony Jardine |
| Counsel for Plaintiff | |
| Dresser-Rand Company | |

/s/*Joseph W. Golinkin II*
Joseph W. Golinkin II

21