United States District Court
Southern District of Texas
**ENTERED**
May 11, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DRESSER-RAND COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-12-184 |
| | § | |
| SCHUTTE & KOERTING | § | |
| ACQUISITION COMPANY, et al., | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND RECOMMENDATION

Pending before the court is Plaintiff's Motion for Civil Contempt Due to Defendants' Violations of the Preliminary Injunction and Motion to Expand the Preliminary Injunction Order (Doc. 159). After considering the motion, the responses and the testimony presented at the hearing, the court **RECOMMENDS** that the motion be **GRANTED IN PART** as outlined below.

### I.  Case Background

This action was filed by Plaintiff Dresser-Rand Company ("Dresser-Rand") against Schutte & Koerting Acquisition Company ("S&K"), Kanaksinh Ashar ("Ashar") and Anthony Jardine ("Jardine") on January 19, 2012, complaining of breach of contract, conversion, breach of fiduciary duty, common law trade secret misappropriation, statutory trade secret misappropriation, tortious interference with contract, civil conspiracy, unfair competition by misappropriation, copyright infringement, violation of the Digital Millennium

Copyright Act,[1] and violation of the Computer Fraud and Abuse Act[2] based on allegations that Ashar downloaded without authorization documents from Dresser-Rand and its Gimpel Valve unit prior to his leaving Plaintiff's employment. On January 20, 2012, the court entered a temporary restraining order that prohibited the defendants from, among other things, retaining possession of Dresser-Rand confidential information, exploiting Dresser-Rand's trade secrets, using Ashar or Jardine's knowledge from their employment with Dresser-Rand for any reason, or marketing or selling any item that was developed based on Dresser-Rand's confidential assembly drawings, parts drawings, test data and specifications.[3]

On January 26-27, 2012, a preliminary injunction hearing was held. Daniel Levin, Charles Hines, Jr., and Ashar testified for Dresser-Rand; Michael Pintozzi testified for Defendant S&K.[4] On February 13, 2012, the court issued a memorandum opinion.[5] The court found that Ashar downloaded a significant number of files in December 2010 before leaving his employment with the Gimpel Valve

---

[1] See 17 U.S.C. § 1202.

[2] See 18 U.S.C. § 1030.

[3] See Doc. 3, Temp. Restr. Ord. Dated Jan. 20, 2012.

[4] See Docs. 12 & 13, Tr. of Hr'g Dated Jan. 26-27, 2012. ("Tr.").

[5] See Doc. 16, Mem. Op. Dated Feb. 13, 2012.

unit.[6]  Ashar began working at S&K developing its oil-operated trip throttle valve ("OOTTV") on January 31, 2011.[7]  Ashar testified that all of the downloaded Dresser-Rand/Gimpel materials remained on several thumb drives and were never uploaded to the S&K computers or servers.[8]  Between January 31, 2011, and the preliminary injunction hearing, S&K accessed Ashar's Dresser-Rand files to calculate engineering specifications for an OOTTV, and to prepare a sales brochure and other sales-related documents for its OOTTV.[9]

The court found that "at least some" of the materials downloaded by Ashar would qualify as trade secrets but, based on Pintozzi's testimony that he was not aware that Ashar and Jardine had stolen Dresser-Rand materials, the court found that Dresser-Rand failed to carry its burden that S&K misappropriated trade secrets.[10]  The court also found that there was insufficient evidence from which to conclude that Ashar or Jardine actually used Dresser-Rand's trade secret information in designing S&K's OOTTV.[11]

The court found that Dresser-Rand met its burden to show a

---

[6]   See id. p. 3.

[7]   See id.

[8]   See Doc. 12, Tr. of Hr'g Dated Jan. 26, 2012 pp. 101-102.

[9]   See id. p. 102.

[10]  See Doc. 16, Mem. Op. Dated Feb. 13, 2012 pp. 13-14.

[11]  See id. pp. 15-16.

likelihood of success on the merits of its breach of contract and Texas Theft Liability Act claims against Ashar and Jardine.[12] Because the court found that Dresser-Rand failed to carry its burden on any claim lodged against S&K, the court declined to enjoin S&K from carrying on its business.[13] The court ordered that Ashar and Jardine turn over to their attorney all copies of the files they downloaded from Dresser-Rand and ordered that those files be held by the attorney until a determination has been made on the merits.[14] The court also enjoined Ashar and Jardine from using any Dresser-Rand materials in the development of S&K's OOTTV valves in the future.[15] The court prohibited S&K, Ashar and Jardine from using any materials copied from the Dresser-Rand brochure on the Gimpel OOTTV in S&K's brochure for its OOTTV.[16]

## II. Motion for Contempt

In the present motion, Dresser-Rand complains that S&K violated the court's injunction by using Dresser-Rand drawings in sales information sent to Shell Monaco on June 15, 2015.[17] Dresser-

---

[12] See id. pp. 16-18.

[13] See id. p. 18.

[14] See id. pp. 18-20.

[15] See id. pp. 20-21.

[16] See id., referencing Doc. 9, Ord. Dated Jan. 30, 2012 p. 2. "It is further ORDERED that the S&K defendants cease using any materials copied from the Dresser-Rand brochure on the Gimpel OOTTV in the brochure for the S&K defendants' OOTTV."

[17] See Doc. 159, Pl.'s Mot. for Civil Contempt p. 7; see also Doc. 159-1, Ex. C to Dresser-Rand's Motion for Contempt, Email Dated June 15, 2015.

Rand also complains that S&K has retained a dynamic spreadsheet known as the Valve Design Program that was used to make calculations in the design of S&K's OOTTV valves and used several Dresser-Rand documents in the preparation of S&K's OOTTVs, such as a pressure-drop calculation spreadsheet, a bill of materials used in the preparation of designing and manufacturing an OOTTV for Elliott, a spring calculation program, a parts list for an OOTTV, operational test procedures, a standard document package and a Gimpel Blind Flange Analysis calculation program.[18] Plaintiff seeks a modification of the preliminary injunction to preclude S&K from manufacturing or delivering any OOTTV, an award of actual damages, trebled, and recovery of its attorneys' fees related to filing of the motion.[19]

The evidence in the record shows that in 2011, prior to the issuance of the injunction, Ashar utilized Dresser-Rand documents to generate engineering calculations, a parts list, a sales brochure, a standard document package and operational test procedures for two OOTTVs sold to Elliott.[20] Ashar used the Dresser-Rand documents as "go-bys" and simply removed the Gimpel name and substituted S&K's name on the documents.[21]

---

[18]   See Doc. 159, Pl.'s Mot. for Civil Contempt pp. 7-15.

[19]   See id. pp. 18-22.

[20]   See Doc. 159-1, Ex. D to Pl.'s Mot. for Contempt, Dep. of Ashar, pp. 141-42, 160, 173-76, 384, 392-96, 405-11, 419, 424.

[21]   See id. pp. 384, 410-11.

Caroline Nelson testified that in 2011 she copied several Dresser-Rand bulletins and a Gimpel brochure to S&K's format and that those documents were placed on the S&K website and later saved on the S&K servers.[22] At his deposition, Ashar admitted that he used a calculation spreadsheet he copied from Gimpel servers to design two OOTTVs for Elliott in 2011.[23] When he found an error on the spreadsheet, he phoned a former colleague at Gimpel to inform her of the error and asked that she reciprocate and let him know if she found any errors in the spreadsheet going forward.[24] Ashar admitted to using a number of Gimpel documents copied before he left Dresser-Rand in the design of two S&K OOTTVs in 2011.[25] S&K continued to use documents that had been copied from Gimpel documents from February 2012 to February 2016 as outlined in Dresser-Rand's Motion for Civil Contempt.[26] Ashar admitted that he used the Gimpel calculation spreadsheet in designing valves for S&K.[27]

At the hearing, Michael Pintozzi testified that, in compliance

---

[22] See Doc. 159-1, Ex. A to Pl.'s Mot. for Contempt, Dep. of Caroline Nelson, pp. 50, 86-87, 102-05, 116-17.

[23] See Doc. 159-1, Ex. D to Pl.'s Mot. for Contempt, Dep. of Ashar, pp. 160, 172-76.

[24] Id. pp. 393-94.

[25] Id. pp. 383-84, 392-98, 399-405, 419.

[26] See Doc. 159, Pl.'s Motion for Contempt, pp. 14-15.

[27] See Doc. 159-1, Ex. D to Pl.'s Mot. for Contempt, Dep. of Ashar, pp. 160, 173-74, 176, 394, 396.

with the court's temporary restraining order, S&K replaced five hard drives on computers used by Ashar, Jardine and Maxwell with new hard drives. The old hard drives were given to the Federal Bureau of Investigation. S&K also performed a search of its servers after the injunction was issued and found no detailed engineering drawings belonging to Dresser-Rand. Pintozzi maintained on his computer a "litigation file" containing Dresser-Rand documents. Pintozzi explained that he interpreted the court's refusal to enjoin the manufacture and sale of the two OOTTVs to Elliott as implicit permission to provide to Elliott the documents that typically accompany the sale of an OOTTV even though the documents had been copied from Dresser-Rand documents. Pintozzi testified that he was aware that Ashar was using the dynamic spreadsheet to make valve calculations and learned after Ashar's deposition that he must have used Dresser-Rand procedures documents to prepare other S&K documents. Exhibit C to Dresser-Rand's motion shows a June 15, 2015 email from Pintozzi attaching Bulletins 8955 and 8956 in an effort to solicit business from Shell Monaco. Pintozzi explained that he accessed those Dresser-Rand documents on his computer by accident and his distribution of those brochures to Shell Monaco was inadvertent.

### III. Discussion

A magistrate judge has limited authority to determine if a party is in contempt of court. See 28 U.S.C. § 636(e). On the other hand, Federal Rule of Civil Procedure 37(b) empowers a

presiding judge to impose a range of sanctions for the violation of a court order, including striking pleadings, dismissing the action and finding a party in contempt of court. See Fed. R. Civ. P. 37(b)(2)(A). The court may also require the payment of expenses for disobedience of a court order. See Fed. R. Civ. P. 37(b)(2)(C). The full text of Rule 37(b)(2)(C) provides:

> Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

At the preliminary injunction hearing in January 2012, Pintozzi testified that he was not aware that Ashar had taken Gimpel documents, but there is now evidence that, in 2011, Pintozzi had received Gimpel's pricing information, manufacturing and assembly instructions, test procedures, valve sizing programs and pressure drop programs. Dresser-Rand argues that Pintozzi's false testimony was crucial in the court's decision not to stop the manufacture and sale of the two valves to Elliott.

The court agrees that Pintozzi's testimony at the January 2012 preliminary hearing was disingenuous in light of Ashar's testimony that he had forwarded Gimpel documents with the word "Gimpel" on them to Pintozzi as attachments to emails during 2011. But the court must determine if S&K violated the court's injunction, not whether Pintozzi was less than candid at the preliminary injunction hearing.

After considering the evidence, the court finds that Pintozzi's re-publication of the sales brochure in June 2015 to Shell Monaco clearly violated the court's injunction. S&K's adoption of the Gimpel documents predated the injunction, however, S&K's continued use of documents copied from the Gimpel "go-by" documents and Gimpel spreadsheets is a violation of the injunction because S&K continued to use and appropriate the Gimpel property after the injunction was issued. S&K made no effort to inquire about the parameters of the court's injunction in light of its copying and using Gimpel documents and spreadsheets but, rather, favorably interpreted the court's refusal to enjoin the manufacture of the valves for Elliott as a green light to continue to use the Gimpel-derived materials. This, in the undersigned's opinion, stretches the effect of the court's ruling too far.

While the court does not credit Pintozzi's explanation concerning the June 2015 republication of the OOTTV brochure, it is factually insufficient to predicate the imposition of actual damages, trebled, or the wholesale expansion of the court's injunction to prohibit the manufacture, sale or delivery of any OOTTV valve until this suit is concluded. In light of S&K continued use of purloined material, the court believes that a limited expansion of the injunction is required to address S&K's ongoing use of the Gimpel-derived documents.

It is **RECOMMENDED** that Plaintiff's motion for contempt be

**GRANTED IN PART** with respect to the June 2015 disclosure. It is further **RECOMMENDED** that Plaintiff's motion to expand the injunction be **GRANTED** as follows: S&K is prohibited from the use or dissemination of any S&K document that was prepared from a Gimpel (or Dresser-Rand) document. S&K must prepare, from whole cloth, its own brochures, test procedures, pressure-drop calculations, spreadsheets and any other document that it prepared by copying, in whole or part, a Gimpel (or Dresser-Rand) document. In short, S&K must make the effort it should have made in 2011 to create its own documents and not take shortcuts by using Gimpel or Dresser-Rand documents.

And, because S&K violated the court's order by republishing the June 2015 brochure without credible explanation, as well as by continuing to use the Gimpel documents incorporated into S&K's documents, the court finds that an award of attorney's fees to Plaintiff is warranted. Attached to the present motion is Plaintiff's motion for $133,598.89 in attorneys' fees and expenses related to the present motion. The court will set a hearing to consider the amount of reasonable attorney's fees to be assessed if this recommendation is adopted.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order

2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** this 11th day of May, 2018.

_____
U.S. MAGISTRATE JUDGE